Good morning. Good morning. Lauren Graham on behalf of the appellant Daniel Draper. On behalf of Mr. Draper, we've raised two issues. The first evidentiary issue and the second one having to do with sentencing. And regarding the first issue is whether or not the court abused his discretion in not allowing Mr. Draper to present corroborating evidence in the form of documents to support his testimony about being in fear. You're talking about the police reports? Police reports. That's right, counsel. The district judge ruled in a motion in limine to exclude the evidence regarding the police reports. Is that your understanding as well? He did initially and then it was brought up again during trial. And again... That had to do with the exclusion of witness testimony, right? It was both the witness testimony and the testimony earlier that was denied under the motion in limine. The district court allowed Draper to testify about newspaper articles he had read. He did. Including domestic violence to show what his feeling was. That's absolutely right. And he did testify to that. But what he attempted to do is to corroborate his testimony so the jury wouldn't think he was fabricating his... what he was saying about the victim by introducing additional evidence that was allowed in James. I guess what I'm struggling with is if the district court ruled on this issue in limine, even though your client tried to bring it in later again, the reality is we probably don't have jurisdiction, do we? I mean, it's just a preliminary ruling and the district court was quite clear that that's what it was. But the district court did also indicate that during trial it would revisit that issue if... And you're saying that there was a specific motion again during trial to introduce the newspaper articles again? I believe so, Your Honor. In the excerpt of record that I cited in the brief, there was a colloquy between the court and defense counsel where, again, he was attempting to... Did he specifically say, Your Honor, I'd like you to revisit your ruling in limine and admit these news articles? I don't think he used that exact language. Well, something to that effect. But to that effect, I believe that is in the record. You don't know where? Well, I could try to... That's rather important because, at least for me it is, because I don't think we have jurisdiction to consider the matter if it was a preliminary determination that was never revisited. So if there's a new motion I need to know about, at least I do, I'm sure my colleagues would be interested in that as well. I believe, Your Honor, that it's in the excerpt of records, Volume 1, at pages 9 and pages 17 through 18, where defense counsel has argued... Volume 1, pages 1? Volume 1 at 9, page 9, and Volume 1 at pages 17 through 18. And can you read me that particular part where there's a motion to reconsider what the district  judge has said? Yes. Okay. Your Honor, I don't know if it's a... He did it in the form of a motion. I'm looking for... Let me put it this way. We can look at it. If you don't... If you have it, please read it. If not, would you agree that if there is no, as we look at the language of using a fair reconstruction, if there's no attempt to get the district judge to revisit the ruling, that we don't have jurisdiction to consider this particular evidentiary issue? Well, Your Honor, on page 9, the court says, but on the issue of the motion in limine, still you've given me nothing that shows you can establish by independent evidence violent acts, not against Draper or his family, but against other parties. So I think the court was revisiting the motion in limine at that point. Well, did he revisit it or he just simply said, basically, you know, there's nothing new, I'm sticking by what I said? Well, I think he did rule again on the motion in limine that he wasn't going to allow that... So you'd view that as being a new motion and just a regular evidentiary ruling in the trial? Well, I don't know if it makes a difference one way or the other, but I believe that he renewed his motion in limine and he was also making a motion during trial to allow that evidence in. Counsel, I guess I'll tell you what's troubling me. Even if we have the ability to review this error that you've alleged, I would be inclined to think that it was harmless given the rest of the evidence against your client. And I'd like to hear what you have to say about that. Well, it goes to his defense of self-defense and that's because he was only convicted of voluntary manslaughter. So... This is the one where he shot the guy with a shotgun? It is, Your Honor. And I think... After breaking into the man's house. I think the self-defense is a tough defense and I think that the trial counsel did a pretty good job. And I think Mr. Draper's best issue is probably talking about the sentencing issue. I agree. Yes, I agree. And so I'd like to move on to that before my time runs out. And on that issue, procedurally, the Court did not follow an analysis and make findings under 3553 the way it is required. The Court initially, when sentencing began, indicated a couple of times that we're going to get to the 3553 issues after we go through the guideline calculations. And the Court also had discussions with the probation officer about various things within the pre-sentence investigation report. But the Court never adopted the pre-sentence investigation report findings as its own. So I think what we're left with for a 3553 analysis is the findings of the Court. Well, counsel, it's pretty clear under our case law, is it not, that it's not necessary for the district judge to, in high verba, go down the 3553A factors, is it? No, I don't think he has to. All he has to do is to consider them. How he considers them, he doesn't have to state with respect to each one he's done. He obviously had that in mind, or he wouldn't have even referred to 3553, right? Well, he had it in mind, but I don't think he ever got back to doing it by making his findings. When he got to the point where he decided that he was obligated to put on the record his findings, which is that page 2 of the excerpt of record, he starts out by indicating, I have to give you, Mr. Draper, the maximum sentence under the law. And then he goes on to only really discuss the factor number 1. He talked about his concern for public safety, right? Pardon? Didn't he talk about public safety? He talked mostly about the offense conduct. I mean, that's where the focus was all through the... He took a life. Yes. He's been convicted of taking a life. And he was convicted of doing that. And there was, the sentencing guidelines were 17 years to 24, and he gave them 30. Thirty months. Sentencing guidelines were... Thirty years. 87 to 108 for the voluntary manslaughter. We're up, yeah, to 24, and he gave him, he sentenced him to 30 years. So your question is that he gave him 60 years too much? He varied up on the voluntary manslaughter from 108 months to 180 months. So it was a very significant variance up on count 1. Right. And on count 2, he gave him the maximum of 15 years. It was a 10 to 15 year guideline. And so the argument is that he didn't justify giving him that large of a variance, and he didn't consider many things, including the character of the defendant and disparity of sentencing. Within the brief, we cite some stats from VOP, which indicate that voluntary manslaughter sentences are around 57 months, not 180 months. And so I don't believe those things were considered by the court. Well, I think the disparity in the sentences given in other cases wasn't considered, because I don't think trial counsel presented that information to the District Court of Sentencing, right? He may have. I'm not sure if it's necessary for the trial counsel to argue all the 3553 factors when the judge is required to consider all of those factors. And so I don't think he considered the character of the defendant, his family, his life without much crime. Counsel, how can you say he didn't consider the character of the counsel? I mean, as my colleague just indicated, he indicated what he did here in ER 4 and 5. The guy was asleep in his bedroom, came out of the bathroom, he shoots him with a shotgun, he hits him over the head, breaking his skull, breaking the butt of the shotgun. I think he was considering the character of your client. I mean, he didn't find him to be an admirable person. He considered the character of him for that one moment in his 48 years of his life. He didn't consider everything that had preceded that moment. Is he required to do that? I think he's required to consider the character of the defendant, yes. Right. But our case law and the statutes don't say you've got to go through and say, well, let's see, in grade school he did this, and then junior high he did that. You're just looking at the totality of the individual as understood by the judge, as shown to the judge through the probation report, whatever else happened to be there. Are you suggesting the record indicates he didn't look at the probation report? I mean, not the probation report, but the report from the authorities about the recommended sentence? No, I'm not considering. I'm not saying that he did not look at the report, but I'm saying he didn't consider the factors that he's required to consider by statute. But you don't know that. He referred to 3553A, right? He did, and I guess we don't know what he was thinking unless it's part of the findings that we can look at. And he's supposed to, the law requires him to make findings that we can review once we're here at the Court of Appeals.  Thank you, counsel. Let's hear from the government. May it please the Court, William Reed, Assistant United States Attorney, District of Nevada. In this matter, the district court did correctly vet the evidence, the other act evidence that the defendant sought to admit regarding the deceased. However, as Your Honor alluded earlier, any error on the district court's part in not allowing some of this evidence, the police reports, the newspaper articles themselves, witness testimony about these other acts, was, did not substantially, it was not more likely than not that that affected the verdict. Can I ask one question about the word error? Did you say it was error? Are you confessing error? No, Your Honor. I began with the district court did correctly vet this and precluded the admission of this evidence, but if the court were to find that it was error, it did not more likely than not affect the verdict. He let him have in the newspaper articles that he'd read? Yes, quite liberal with that evidence. He even allowed him other witnesses to testify about other fracases between the deceased and Mr. Draper. There was a 911 phone call that was played about a prior incident where Mr. Draper testified the deceased had threatened him with a shotgun. The 911 call was played. The record was introduced. The district court gave Mr. Draper quite a bit of latitude, so I'm not confessing error. Bottom line is, even if there were error, you're saying it was harmless. That's correct, Your Honor, and I just was trying to maybe in our, so the standard of review is that the district court has a discretion, and if there is, if it abuses its discretion, it does not affect the verdict, and that's what I was trying to express, although inarticulately so. In this case, given, as Your Honor alluded earlier, the substantial evidence, the overwhelming evidence that contributed to this jury's verdict, it's not more likely than not that this jury would have outright acquitted Mr. Draper if this other extraneous evidence, other active evidence had been admitted. That's the only point I meant to try to make, Your Honor. Can you tell us about the sentence? Well, before you get there, I just had one question about the trial itself. Was the defendant's son precluded from testifying about the incident where the victim pointed the shotgun at the defendant? Your Honor, I don't believe that he was precluded from that. I think... He didn't testify. He did not testify. And I can't figure out why, because that seems like way more powerful evidence than these I don't, that's why I couldn't figure out from the record. I believe that trial counsel was asked by the district judge, are you going to have any additional witnesses? I was reviewing that last night, and I believe that trial counsel said something to the effect of, unless some contingency arises, I'm paraphrasing, Mr. Holley, that's the defendant's son, Nicholas Holley, will be testifying. That was my recollection, but that never occurred, and I don't know exactly why. Okay, but the district court never precluded the son from that. That's not my understanding of it, Your Honor, is that that was not precluded. The district court did preclude these witnesses about the other act evidence, these tangential things that occurred over the years. That didn't involve the defendant himself, right? I thought that was the limitation the judge ultimately drew, is that, look, if you want to talk about incidents that involve you, you know, you and the victim, that's fine. I'll let you bring in whatever you want on that. But if it's going to be, you know, the victim was involved with some other person that you don't even know, then I'm not going to let any specific incidents, instances of that kind of conduct. That's correct, Your Honor, and the district court even went one step further, said anything that you have consciousness about that occurred involving the deceased, you may testify to it, just I'm not going to allow you to bring in witnesses and newspaper articles themselves and police reports. That's my understanding. OK, sentence. I'm sorry, I didn't mean to get you sidetracked, just to talk about the sentence. The sentence in this case was a, there's no denying that the district court imposed the maximum sentence. There's no way to get around that. However, we're talking about the six year upward variance on the voluntary manslaughter that exceeded the guidelines. In this case, well, under this court's standard of review, a sentence imposed by a district court is viewed to be reasonable unless that sentence is found to be illogical, implausible, or without inferences that may be drawn from the record. And in this case, none of those contingencies arise here. The district court sat through this. This was a trial, obviously this wasn't a guilty plea, so the court had the benefit of listening to, it was a four day trial, had the benefit of listening to all the evidence in this case. And under the totality of the circumstances, given the wide discretion that a district court has in fashioning sentence, the court imposed a reasonable sentence, found that this case, I don't think it used these words, but found that the case was beyond the limits of the statute. Well, what we need to find out is whether we can say that he considered reasonableness for the sentence which is required. Now, he doesn't have to use the code section as long as we can assume from what he said that he considered reasonableness. Now, I take it, first of all, he did not adopt the pre-sentence report. Is that correct? The district judge? Yes. If I understand Your Honor's question, he did, the district judge did adopt the pre-sentence investigation report because the probation officer in the PSR recommended this very sentence, this upward variance that was imposed. Well, I thought counsel said that he did not accept the pre-sentence report, but he did accept the pre-sentence report. That's, yes, Your Honor, he did. Okay. And in the pre-sentence report, the probation officer recommended going above the guidelines and giving the very sentence that was given here, the 30 years. Yes, yes, Your Honor. That's correct. I'm looking at the... Well, that's a different case then. Yes, sir. He, the probation officer made, recommended this sentence, and the district court adopted that recommendation and imposed the upward variance as to the voluntary manslaughter. The 924J sentence, the use of the firearm during, in relation to a crime of violence involving death, that, the sentence that the district court imposed with that count, that did track the sentencing guidelines, however, it was at the top end of the guidelines, the 15 years, and by statute, that sentence, it was a mandatory consecutive sentence to the voluntary manslaughter. Here again, just to, the district court did hear all the evidence, it was a, it found the case as, as, Judge... We don't require them to use the magic words of the, I'm now considering the reasonableness. We just have to be able to see whether the district judge was going through the process of determining that, is this a reasonable sentence? And I, ordinarily, you get that from the pre-sentence report if the judge adopted it and you indicated that he did. Yes, sir. Your Honor, in the district court, at the beginning, I'm looking at the, the sentencing transcript. It's clerk's record 116, page 4. At the outset, the court said, I'm reading it, let's proceed as follows, counsel, the court is required to make a guidelines finding, which we'll do first, then we'll consider all the factors under 3553 in that order, if you would, please, and then the court launched into the sentencing hearing. The court did not, when it pronounced sentence, didn't say, it didn't go back and say, I've considered the 3553A factors. However, it's, by making the statement at the outset, it's pretty transparent that it did consider it, and as Your Honor said earlier, it's not required to tick off each factor. I think that's the verbiage from this court and other sentencing. So, the court imposed a reasonable sentence, a serious sentence, there's no denying that, and I would ask this court to affirm the sentence and the conviction in this matter. Unless there are any other questions, I would, I see my time's rapidly running out, I would submit the matter to this court. Very good. Any other questions? Thank you. 30 seconds. 30 seconds we'll give you, counsel, since it's the last comment of the day. I'm confident this is going to be pithy and worthwhile. And this is on the issue of whether or not the court adopted or accepted the findings of the pre-sentence investigation report. In my experience, at some point during the sentencing hearing, after going through the pre-sentence investigation report, the court, under Rule 32, actually adopts as his own findings, the pre-sentence investigation report, and that was never done in this case. And that's why I made that argument, that under Rule 32, the court never did accept and adopt the findings contained in the PSR. Okay. Thank you. Thank you, counsel, all of you. The court, this case is now submitted, and the court stands adjourned for the week. Thank you.
judges: Wallace, Smith, Watford